**John D. JOHNSTON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**PCA No. 78–0416.**

United States District Court,
N. D. Florida,
Pensacola Division.

Nov. 14, 1978.

Roderic G. Magie, Pensacola, Fla., for plaintiff.

Scott L. Gorland, U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM DECISION

ARNOW, Chief Judge.

Before the court is motion of defendant for summary judgment.

■ At the outset, the law appears settled in situations such as that here involved that employees of independent contractors cannot recover from the government under the Federal Tort Claims Act on the basis of contractual obligations requiring various safety measures and the presence of government safety inspectors in the area. *Zabala Clemente v. U. S.*, 567 F.2d 1140, 1149 (1st Cir. 1978) and cases cited therein. Reservation by the United States of the right of inspection or actual inspection, without more, does not subject the government to liability. *Jeffries v. U. S.*, 477 F.2d 52, 56 (9th Cir. 1973). The United States may not be held liable because it retains the right, and actually undertakes to require, adherence to safety regulations. *Fisher v. U. S.*, 441 F.2d 1288, 1292 (3rd Cir. 1971) and cases cited therein. Issuance of regulations and a manual relating to a safety program will not render the government liable. *Market Insurance Co. v. U. S.*, 415 F.2d 459, 463 (5th Cir. 1969).

In his memoranda and at the hearing on the motion, plaintiff relies on the following statement in *Kirk v. U. S.*, 270 F.2d 110, 118 (9th Cir. 1959):

"We agree with the following statement which appears in the memorandum decision of the trial court:

'The voluntary assumption of such a program [accident prevention and safety program] for the welfare of all parties concerned should not create liability on the part of the defendant to the employees of contractors where the performance, or failure to perform, in no wise increases the hazard to the employees of the contractor beyond that which would otherwise have been present. . . .' "

Plaintiff contends the failure of the government inspectors to require guardrails on the scaffold, although not the cause of the accident, increased the hazard in that, had there been rails, plaintiff might not have been injured.

Neither the district court nor the appellate court elucidated further on the statement as to increasing the hazard. No case has been cited to, or discovered by, the court in which this statement has been quoted or even mentioned so as to shed any light on the precise meaning intended.

■ In *Roberson v. U. S.*, 382 F.2d 714 (9th Cir. 1967), the court analyzed the two aspects of the Good Samaritan Doctrine, as set forth in Restatement (2d) of Torts §§ 323 and 324A, under which the United States might be liable for voluntary assumption of a safety program. The first element under either aspect is that the actor must undertake, gratuitously or for consideration, to render services to another. The court found that the government in conducting its safety program had not undertaken to render safety services either to the contractor or to his employees. Having decided this first element to be lacking, the court found it unnecessary to consider the remaining elements, one of which is increasing the risk of harm. It therefore appears under the rationale of *Roberson* that before the element of increasing the hazard can apply, it must first be determined that the United States had, in fact, undertaken to render safety services. To the extent the statement in *Kirk* may conflict with this interpretation, the court concludes such statement is inconsistent with the holding in *Roberson* and in the cases previously cited in this decision.

■ The Court of Appeals for the Fifth Circuit has adopted the reasoning in *Roberson*. *Beason v. U. S.*, 396 F.2d 2 (5th Cir. 1968). Applying this reasoning to the facts of this case, the court concludes the United States here did not undertake to render safety services either to the contractor or his employees.

Mere approval of, or acquiescence in, the design of the scaffold here by the government inspector would be insufficient to impose liability upon the United States. *Lipka v. U. S.*, 369 F.2d 288 (2nd Cir. 1966); *U.*

*S. v. Page*, 350 F.2d 28 (10th Cir. 1965). Plaintiff, however, contends the involvement of the inspector here is akin to that of the inspector in *Smith v. U. S.*, 497 F.2d 500 (5th Cir. 1974). In *Smith* the United States was held liable when its inspector had devised, and instructed the contractor's employees in, a defective signalling procedure. Plaintiff relies on the statement at page 17 of the deposition of the inspector, Reese J. Wall, to the effect that the scaffold designs in the manual could not meet the situation so "we had to come up with something". From this, plaintiff concludes the inspector took an active part in designing the scaffold. However, on the same page the inspector testified the contractor designed the scaffold and he inspected it after it was brought to the job site and felt it was safe. Again at page 36, he testified the contractor "presented this to us and we approved it". Clarence Brown, the contractor, testified at page 5 of his deposition that they were given no specific instructions as to how the scaffolds should be constructed, maintained or operated except that the inspectors did ask that one hook on the safety chain be changed after the scaffold had been brought to the job site.

It is clear from the record that the government inspectors did not actively participate in the designing of the scaffold, so the holding in *Smith* could not here apply.

 Plaintiff also asserts liability under the "inherently dangerous activity" doctrine. Under the law of Florida absolute liability is not imposed on the owner or contractee under this doctrine. Therefore, its application to the United States under the Tort Claims Act is not precluded. *Emelwon, Inc. v. U. S.*, 391 F.2d 9 (5th Cir. 1968), cert. den. 393 U.S. 841, 89 S.Ct. 119, 21 L.Ed.2d 111 (1968).

Defendant has not contended the work here involved, painting an aircraft hangar, was not "inherently dangerous". However, in *Wallach v. U. S.*, 291 F.2d 69 (2nd Cir. 1961), cert. den. 368 U.S. 935, 82 S.Ct. 373, 7 L.Ed.2d 197 (1961) the court held aerial painting of a ceiling from a scaffold 20 feet above the floor was not "inherently dangerous".

Assuming, nevertheless, that this activity was "inherently dangerous", the duty owed by an owner to the employees of an independent contractor is not as extensive as that owned to third party members of the public. *Florida Power & Light Co. v. Price*, 170 So.2d 293 (Fla.1964). The duty which plaintiff here seeks to impose on defendant is that owed to third persons. *Emelwon*, supra; *H. L. Properties, Inc. v. Aerojet General Corp.*, 331 F.Supp. 1006 (S.D.Fla.1971). Unless and until it is shown the contracting owner by positive act of negligence or negligent omission on his part causes injury to the employee such owner will not be held liable. *Price*, supra; *Christy v. Florida Power Corp.*, 232 So.2d 744 (Fla.App.1970). As stated before, the record shows no negligence on the part of the government inspectors. See 41 *Am.Jur. Independent Contractors* § 25.

There is no genuine issue of material fact and defendant is entitled to judgment as a matter of law. Judgment will be entered in accordance with the foregoing.