Answer: Answer not required.

Richard Alan LeSUER, a minor, by his father and next friend, M. Hunter LeSuer, and M. Hunter LeSuer, Individually, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff-Appellee,

v.

AMERICAN SCRAP METAL CO. et al., Third-Party Defendants.

No. 78–2687.

United States Court of Appeals, Fifth Circuit.

May 30, 1980.

Marvin A. Urquhart Jr., Michel L. Stone, Panama City, Fla., for plaintiffs-appellants.

Nicholas P. Geeker, U. S. Atty., Clinton Ashmore, Asst. U. S. Atty., Tallahassee, Fla., Barbara A. Babcock, Asst. Atty. Gen., Leonard Schaitman, Linda J. S. Pack, Ronald R. Glancz, Attys. Dept. of Justice, App. Staff-Civil Div., Washington, D. C., for defendant and third-party plaintiff-appellee.

Before HATCHETT and TATE, Circuit Judges, and GROOMS *, District Judge.

GROOMS, District Judge:

This is an appeal from a final judgment of the district court of the Northern District of Florida in favor of the defendant, United States of America, and against the plaintiffs, Richard Alan LeSuer, a minor, by his father and next friend, M. Hunter LeSuer, and M. Hunter LeSuer, individually. Judgment was entered after a non-jury trial of the action which arose under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq.

* District Judge of the Northern District of Alabama, sitting by designation.

Richard Alan LeSuer was seriously injured and permanently disabled by an electrical shock received when a crane driven by his uncle, Joseph LeSuer, came into contact with uninsulated high voltage wires located on the property of the Army Corps of Engineers facility at White City, Gulf County, Florida. Richard, his father, his uncle, and other workmen were on the government premises for the purpose of loading a quantity of scrap metal which had been purchased from the government by American Scrap Metal Company, Inc., whose president is M. Hunter LeSuer. Detailed findings of fact are set out in the opinion of the trial court. These findings cannot be set aside unless clearly erroneous.

Appellants substantially agree with the court's findings of fact, but stress that neither the injured party nor any of the American Scrap Metal crew was warned prior to their entry or during their time on Corps property of the existence of high-voltage energized electrical wires extending across such property. Moreover, they maintain that none of the LeSuer group noticed the wires prior to the accident because they blended in with the backdrop of a forest of pine trees. After reviewing the record, we find that there was sufficient evidence to support the trial court's finding that the wires were plainly visible to any person coming onto the Corps property.

## WHETHER SAFETY MANUAL ESTABLISHED A DUTY OF CARE

The primary issue raised on this appeal is whether the trial judge erred in ruling that the government's own safety regulation was irrelevant and of no legal consequence.

The trial court admitted into evidence certain provisions of the Corps of Engineers Safety Manual (*General Safety Requirements*) EM 385–1–1, 1 March 1967, but the court attached no weight to the regulations, holding them inapplicable to the action of Corps employees in the case *sub judice*.[1]

1. The manual's opening page states in part:

The appellants contend that their work fell within the jurisdiction of the Corps of Engineers and therefore these safety regulations are applicable to them. We disagree.

First, it is perfectly clear that the scrap-loading operation of the LeSuers was not under the Corps' jurisdiction and that the Corps had not, in any way, imposed its safety standards on the company performing the operation. The safety manual is routinely incorporated into the Corps' construction and service contracts; however, it was neither incorporated in the invitation for bids nor the sales invoice issued by the Corps in this instance. The government did not reserve the right to supervise or direct the manner of performance by American Scrap Metal Co., Inc. The "bid and award" sales contract between the government and American Scrap expressly provided that "removal of all property shall be accomplished by the purchaser's own transportation and personnel," and that "it will be the responsibility of the purchaser to arrange for . . . loading incidental to removal of the property." The Corps did not employ American Scrap for any purpose whatsoever, but merely allowed the American Scrap crew to enter its premises to load the material it had purchased.

■ Even if the trial court had found that American Scrap was an independent contractor engaged by the Corps, "the law appears settled in situations such as that here involved that employees of independent contractors cannot recover from the government under the Federal Tort Claims Act on the basis of contractual obligations requiring various safety measures and the presence of government safety inspectors in the area." *Johnston v. United States*, 461 F.Supp. 991, 993 (N.D.Fla.1978), aff'd mem. 603 F.2d 858 (5th Cir., 1979). This is the general rule, even though as above stated the safety standards of the Corps' manual are routinely incorporated into Corps of Engineers' construction and service contracts. Precisely this situation occurred in *Market Ins. Co. v. United States*, 415 F.2d 459 (5th Cir., 1969), where the contract required compliance with the Corps' safety manual, EM 385–1–1, the same one at issue in this case. This Court in *Market* stated that:

> In cases where employees of independent contractors . . . have sustained injuries while performing work for the United States, plaintiffs-employees have unsuccessfully argued that the United States, by the safety provisions of a government contract, has assumed a contractual obligation to the injured employee. [Id. p. 463]

We held in that case that the Corps of Engineers' safety regulations and manual created no legal duty on the part of the government.

■ In this Circuit, as well as others, it is settled law that, while the Corps is authorized to issue regulations for its own operational purposes, there is no Congressional authorization for the Corps to create a duty of care to business invitees leading to liability under the Federal Tort Claims Act. Violation of the Corps' safety standards, therefore, does not constitute actionable negligence. *Market, supra; Zabala Clemente v. United States*, 567 F.2d 1140 (1st Cir., 1978); *Kirk v. United States*, 270 F.2d 110 (9th Cir., 1959).

■ For the above reasons, the trial court did not err in rejecting the plaintiffs' contentions that the Corps own safety regulations created a duty of care, a violation of which constitutes prima facie evidence of negligence.

1. *Purpose and Scope.* This manual establishes the General Safety Requirements for all Corps of Engineer activities and operators. *Application is mandatory to all missions under command of the Chief of Engineers.*

2. *General.* a. Pertinent provisions of this manual will be applied to all work under jurisdiction of the Corps of Engineers, wheth-er accomplished by military, civilian or contractor forces. The term "pertinent provisions" is defined as those provisions which are applicable to the situation at hand.

Section XV of the manual provides certain requirements for the Corps when work is to be performed near electrical wires, such as de-energizing power lines and positioning equipment within minimum clearances.

## STANDARD TO BE APPLIED

Under the provisions of 28 U.S.C. § 2674 the United States is liable under the Federal Tort Claims Act in the same manner as a private individual in like circumstances. This negligence action is governed by the tort law of Florida since the alleged negligent acts or omissions occurred there.

Under Florida law the duty owed by the United States to the LeSuers at the time of the accident was that owed by a landowner to invitees on his premises. The Florida state supreme court in *Wood v. Camp*, 284 So.2d 691 (Fla.1973), held that a single standard of reasonable care under the circumstances should apply to all cases involving invitees, whether they be public invitees, business visitors or social guests.

The trial court relied upon a series of Florida cases in which the courts have established fairly explicit principles governing the standard of reasonable care owed by a landowner or power company to protect the employees of independent contractors and other invitees from the dangers posed by exposed power lines. It is clear that an owner of property on which a power line is located is held to a lesser degree of care than are "persons engaged in the distribution of electricity" and that liability for an invitee's injuries arises only if the landowner had "superior knowledge of the danger." *Quinnelly v. Southern Maid Syrup Co.*, 164 So.2d 240, 242 (Fla.App.1964). On facts very similar to the present case, the court in *Quinnelly* stated the standard of care required when a crane is used near power lines:

> It was not the duty of the land owner to furnish the plaintiff a safe place to work, but to use due care in maintaining his premises. Notice or warning is not required where the dangerous condition is open and obvious to a person who is exercising reasonable care for his own safety. *Trimyer v. Norfolk Tallow Company*, 192 Va. 776, 66 S.E.2d 441. The existence of an open and obvious power line is not an unsafe condition in and of itself. The defendant land owner was not engaged in a dangerous occupation; neither was the plaintiff. [pp. 242–43]

The Corps of Engineers satisfied the landowner's duty of care, as set out in *Quinnelly, supra*, and in similar Florida cases. *Christy v. Florida Power Corp.*, 232 So.2d 744 (Fla.App.1970); *Somers v. Meyers*, 171 So.2d 598 (Fla.App.1965).

Where, as in the present case, the electric wires are in plain sight with no obstructions, the property owner has uniformly been absolved of liability by the Florida courts for injuries suffered by an inattentive person who failed to take note of the wires' potential danger. *Richmond v. Florida Power & Light Co.*, 58 So.2d 687 (Fla.1952); *Somers, supra; Quinnelly, supra*. Plaintiffs' inattentiveness should not be imputed to the defendant to impose liability upon it. Under the circumstances here existing there was no superior knowledge of danger on the defendant's part. Where the power line is easily seen and obvious, "any reasonable man should expect and anticipate the potential hazard." *Quinnelly, supra*, at 242. In the instant case the Corps was under no duty to warn, to de-energize the wires, or to supervise the actions of Joseph and Hunter LeSuer, who had previously visited the premises and who were experienced in taking delivery of purchased goods. We agree with the trial court that "since the danger was obvious, the plaintiffs had a duty to guard themselves against contact with the power line." The Corps cannot be held liable since, as noted by the Sixth Circuit, "the Government as the owner of [the premises], could not have anticipated that a reasonably careful workman would not protect himself from the known and obvious danger here involved." *Gowdy v. United States*, 412 F.2d 525, 535 (6th Cir., 1969), cert. denied 396 U.S. 960, 90 S.Ct. 437, 24 L.Ed.2d 425 (1969). *See also Stanley v. United States*, 476 F.2d 606 (1st Cir., 1973).

The trial court properly applied Florida law to determine the required duty of care and to conclude that this duty had not been violated. The judgment below is therefore AFFIRMED.