Roderick **JENNINGS**, et al., **Plaintiffs**,

v.

**UNITED STATES of America, Defendant,**

v.

**GEORGE HYMAN CONSTRUCTION CO., Third Party Defendant.**

Civ. A. No. 79–1404.

United States District Court, District of Columbia.

Oct. 22, 1981.

Allen J. Lowe, Washington, D.C., Alan R. Siciliano, Upper Marlboro, Md., for plaintiff.

Jason Kogan, Asst. U. S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

Plaintiff Roderick Jennings, while employed by George Hyman Construction Company (GHC), fell from a walkway at the National Visitor Center on May 28, 1976. When plaintiff fell, GHC was under contract with the National Capitol Region of the National Park Service, an agency of the United States. After plaintiff's administrative claim for injuries sustained in his fall was denied, plaintiff filed suit on May 25, 1979, in the United States District Court for the District of Columbia against the United States (the Government) under the Federal Tort Claims Act (FTCA). *See* 28 U.S.C. §§ 1346(b), 2671 *et seq.* (1976).

In the first count of the complaint, plaintiff alleged that his injuries were caused by the Government's negligence in failing "to provide plaintiff with a safe place to work; . . . to warn the plaintiff of a dangerous condition of which it knew, or in the exercise of reasonable care and inspection it should have known existed; and . . . to observe the appropriate construction and safety standards and regulations." The second count concerned the claim of Cheri Jennings, plaintiff's wife, for damages due to loss of consortium. The Government, having entered an indemnification agreement with GHC for personal injuries incurred during construction work on the National Visitor Center, brought a third-party complaint against GHC in the instant action.

 This case is now before the Court on the Government's motion to dismiss on the ground that the United States cannot be liable for the acts of an independent contractor under the FTCA. In appraising the sufficiency of the complaint, this Court must assume that plaintiff's well-pled allegations are true, *see Miree v. Dekalb County, Ga.*, 433 U.S. 25, 27 n.2, 97 S.Ct. 2490,

2492 n.2, 53 L.Ed.2d 557 (1977), and must draw all inferences in favor of the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). It is well-settled that plaintiff's "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Despite the Supreme Court's liberal standard for review of complaints on motions to dismiss, plaintiff's complaint should be dismissed as plaintiff can state no claim for relief against the Government as a matter of law.

## DISCUSSION

The FTCA is a limited waiver of sovereign immunity which makes the United States liable for the torts of its employees acting within the scope of their employment to the same extent that a private party would be liable under state law. *See United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976); *Lucas v. United States*, 443 F.Supp. 539, 543 (D.D.C.1978), *aff'd*, 590 F.2d 356 (1979). Although the FTCA defines "employees of the government" to include "officers or employees of any federal agency," it specifically excludes from this definition "any contractor with the United States."[1] 28 U.S.C. § 2671 (1976). "Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver." *United States v. Orleans*, 425 U.S. at 814, 96 S.Ct. at 1975. The Supreme Court has accepted modern common law[2] and the law of many states[3] in making the distinction between the servant or agent relationship and independent contractors "turn on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract." *Logue v. United States*, 412 U.S. 521, 527, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973). Hence, the "critical element in distinguishing an agency from a contractor is the power of the Federal Government to control the detailed physical performance of the contractor." *United States v. Orleans*, 425 U.S. at

1. 28 U.S.C. § 2671 (1976) provides in pertinent part:
 As used in this chapter . . ., the term "federal agency" includes the executive departments, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.
 "Employee of the government", includes officers or employees of any federal agency, . . .

2. These modern common law principles are detailed in the Restatement (Second) of Agency § 2 (1958):
 (1) A master is a principal who employs an agent to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service.
 (2) A servant is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.
 (3) An independent contractor is a person who contracts with another to do something

for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent.

3. Given the FTCA's express exclusion of the Government's liability for the acts of an independent contractor, it is likely that federal law should govern the definition of "independent contractor." L. Jayson, 1 *Handling Federal Tort Claims* § 201 (1964). *See Dumansky v. United States*, 486 F.Supp. 1076, 1090 (D.N.J. 1980). It is unnecessary for this Court to determine whether federal or state law governs this definitional issue, however, for the law of the District of Columbia on this issue mirrors the modern common law approach upon which the Supreme Court has rested its analysis. *See Lodge 1858, American Federation of Government Employees v. Webb*, 580 F.2d 496, 504 (D.C.Cir.), *cert. denied* 439 U.S. 927, 99 S.Ct. 311, 58 L.Ed.2d 319 (1978); *Rose v. Silver*, 394 A.2d 1368, 1371 (D.C.1978). Thus, both federal and state law view the degree of control or supervision as the critical variable in distinguishing an agent or servant from an independent contractor.

814, 96 S.Ct. at 1975; *Logue v. United States*, 412 U.S. at 527–28, 93 S.Ct. at 2219.

While the plaintiff does not appear to contest the Government's argument that GHC was an independent contractor, *see* Plaintiff's Motion in Opposition to Defendant's Motion to Dismiss, it remains important for other conclusions in this opinion to explain why GHC should be classified as an independent contractor. Under the terms of the Government's construction contract with GHC, GHC assumed broad responsibility to control and supervise the construction in the National Visitor Center. Clause 12 of the contract provides:

> The contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any applicable Federal, State, and municipal laws, codes, and regulations in connection with the prosecution of the work. He shall be similarly responsible for all damages to persons or property that occur as a result of his fault or negligence. He shall take proper safety and health precautions to protect the work, the workers, the public, and the property of others. He shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire construction work except for any completed unit of construction thereof which therefore may have been accepted.

In addition, GHC was forbidden from requiring any laborer "to work in surroundings or under working conditions which are unsanitary, hazardous or dangerous to his health or safety, as determined under construction safety and health standards promulgated by Regulations of the Secretary of Labor." General Provisions of the United States-GHC Construction Contract, cl. 34. The only power that the Government appears to have retained in the contract was its ability to inspect the quality of the materials and GHC's workmanship. *See id.* at cl. 34.

█ The Government's retention of an ability to inspect GHC's work is insufficient to shift GHC's status from an independent contractor to a servant or agent. In *Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973), state and local governments contracted with the Federal Bureau of Prisons to care for federal prisoners in state and local jails. *Id.* at 523, 93 S.Ct. at 2217. Under these contracts, the Government reserved "the right to enter the institution . . . at reasonable hours for the purpose of inspecting the same and determining the conditions under which federal offenders are housed." *Id.* at 530, 93 S.Ct. at 2220. The Supreme Court held that the contract gave the Government "no authority to physically supervise the conduct of the jail's employees" and "clearly contemplated that the day-to-day operations of the contractor's facilities were to be in the hands of the contractor." *Id.* at 529–30, 93 S.Ct. at 2220. *See United States v. Orleans*, 425 U.S. at 815, 96 S.Ct. at 1976. Similarly, the broad responsibilities assumed by GHC under the United States-GHC construction contract make clear that the Government had no right to supervise the detailed physical performance of GHC's construction in the National Visitor Center.

Moreover, many courts have permitted the Government to exercise greater supervisory powers over the contractor than in the instant case without altering the contractor's legal status from an independent contractor to an agent or servant. For example, in *Alexander v. United States*, 605 F.2d 828 (5th Cir. 1979), the Fifth Circuit rejected plaintiff's claim that the authority the Government exercised under its safety program at an ammunition plant constituted day-to-day supervision of its contractor. *Id.* at 834. Rather, the court reasoned that the Government's supervision was "only a means of monitoring compliance with the contract and with government safety regulations." *Id.* In addition, the Tenth Circuit has reasoned that "[t]he fact that the contract may have reserved to the United States the right to inspect the work and facilities of the independent contractor, and the right to stop the work, does not in itself override or alter the general rule of nonliability for the torts of the contractor." *United States v. Page*, 350 F.2d 28, 31 (10th

Cir. 1965), *cert. denied,* 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966).

█ Because the Government usually receives a right of general supervision in contracts with private parties in order to ensure that the contract obligations are being met, *see Harris v. Pettibone Corp.,* 488 F.Supp. 1129, 1135 (D.Tenn.1980); *Kropp v. Douglas Aircraft Co.,* 329 F.Supp. 447, 468–69 (E.D.N.Y.1971), "the fact of broad, supervisory control or even the potential to exercise even detailed control, cannot convert a contractor into an agent." *Gibson v. United States,* 567 F.2d 1237, 1242 (3d Cir. 1977), *cert. denied,* 436 U.S. 925, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978). Thus, many federal courts have "consistently held that the United States cannot be vicariously liable for injuries to workmen on Government construction sites, solely because the Government has retained control over the work and safety practices of the independent contractor whose negligence caused the injury." *Id.* at 1243.

In the instant case, the United States-GHC contract provisions created no duty for the Government to provide for the safety of GHC's employees since the safety of GHC's employees was under the exclusive control and supervision of GHC. Although the Government retained the right to inspect GHC's work, this authority was insufficient to shift GHC's status from an independent contractor to a servant or agent. As a result, the United States should not be liable for any negligent acts by GHC which contributed to plaintiff's fall.

Nevertheless, plaintiff claims that the Government had a duty to provide for the safety of GHC's employees because such a duty could not be delegated to GHC under the United States-GHC contract provisions. Plaintiff makes two arguments in support of this theory of nondelegability. First, plaintiff contends that District of Columbia Construction Regulations imposed a duty upon the Government to maintain reason-ably safe working conditions on the construction site. Second, plaintiff maintains that since his work on the scaffolding was inherently dangerous, the Government did not have the power to delegate this duty to plaintiff's employer, GHC.

█ Plaintiff's first argument concerning the District of Columbia Construction Regulations is totally devoid of merit. While plaintiff correctly suggests that the District of Columbia requires that scaffolds and walkways employed in construction projects must be in a safe condition, *see* District of Columbia Safety Standards, Rules and Regulations—Construction, tit. 11–B, ch. 21, § 11–21009 (1981), plaintiff ignores the fact that these regulations are imposed only on employers. *See id.* §§ 11–21001, 11–21006(a)–(d) (1981). In addition, the Construction Regulations require that "[t]he general or prime contractor of a project shall arrange to have inspections made during the period of the project for the purpose of maintaining compliance with these Safety Standards, Rules, and Regulations. *Id.* § 11–21007 (1981). Therefore, the District of Columbia Construction Regulations place the duty on the employer, GHC, to provide safe working conditions and to inspect the construction site.[4] Moreover, even if these regulations could be contorted to impose initially some responsibilities on the Government, no provision of the Construction Regulations bars the shifting of these obligations to the contracting party, as was done in the instant case.

█ Although also lacking in merit, plaintiff's second argument concerning the inherently dangerous nature of his work at the National Visitor Center requires a more detailed discussion. The FTCA imposes liability only when there has been a "negligent or wrongful act or omission" of a federal employee. *See* 28 U.S.C. § 1346(b) (1976). The "inherently dangerous activity" doctrine, however, imposes liability not because a negligent or wrongful act has

**4.** Assuming, *arguendo,* that the United States-GHC construction contract was unclear in allocating these responsibilities, then the District of Columbia Construction Regulations make GHC responsible for providing safe working conditions and conducting safety inspections on the construction site.

been committed, but because the activity involved is one in which, despite the exercise of all due care, there is a significant likelihood of injury. As a result, the "inherently dangerous activity" doctrine rests on a theory of absolute or strict liability.[5] The Supreme Court has held, however, that the Government cannot be held strictly or absolutely liable for ultrahazardous activity. *See Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972); *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). Notwithstanding state law to the contrary, the FTCA does not authorize the imposition upon the Government of any type of strict liability. *Laird v. Nelms*, 406 U.S. at 799, 92 S.Ct. at 1900; *Dalehite v. United States*, 346 U.S. at 45, 73 S.Ct. at 972. As a result, even if the District of Columbia recognizes the "inherently dangerous activity" doctrine (which the plaintiff has not established) this doctrine cannot serve as a basis of liability in the instant case.[6]

■ Assuming, *arguendo*, that plaintiff could employ an "inherently dangerous activity" theory under the FTCA, plaintiff still cannot demonstrate that construction work on scaffolding and walkways is an inherently dangerous activity. Courts have consistently held that working on scaffolding and walkways is not an inherently dangerous activity. *See Courtney v. Island Creek County Coal Company*, 474 F.2d 468 (6th Cir. 1973); *Lipka v. United States*, 369 F.2d 288 (2d Cir. 1966), *cert. denied*, 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 997 (1967); *Wallach v. United States*, 291 F.2d 69 (2d Cir.), *cert. denied*, 368 U.S. 892, 82

S.Ct. 145, 7 L.Ed.2d 90 (1961); *Johnston v. United States*, 461 F.Supp. 991, 993 (N.D. Fla.1978), *aff'd*, 603 F.2d 858 (5th Cir. 1979) ("mere approval of, or acquiescence in, the design of the scaffolding here by the government inspector would be insufficient to impose liability on the United States"). If working on scaffolding and walkways were held to be an inherently dangerous activity, then all construction projects would be classified as inherently dangerous activities. Such a holding would expand the "inherently dangerous activity" theory far beyond its proper scope. Thus, to the extent that plaintiff's allegations attempt to hold the Government responsible for any negligence by GHC in failing to maintain safe working conditions and to conduct safety inspections, these allegations must be dismissed.

■ The only remaining allegation in plaintiff's complaint is a possible theory of direct liability for the Government's failure to supervise GHC. Although it is unclear from the face of the complaint, plaintiff may be arguing that the Government was negligent in failing to supervise GHC in the latter's attempts to provide a safe workplace, to warn plaintiff of any dangerous conditions revealed by a reasonable inspection, and to abide by the appropriate construction standards and regulations. This Court's earlier determination that GHC is an independent contractor effectively forecloses plaintiff's argument of direct liability since the Government had no legal obligations to employees of its independent contractor. Since the Government properly allocated any duty it may have had to provide

---

5. The "inherently dangerous activity" doctrine also may be viewed as stating a theory of vicarious liability under which a party is liable for the acts of its independent contractor. *See Gibson v. United States*, 567 F.2d 1237, 1244 (3d Cir. 1977), *cert. denied*, 436 U.S. 925, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978). As a result, liability is premised on a form of *respondeat superior* which is imposed on a contractee as a result of the negligence of its independent contractor. *See Dumansky v. United States*, 486 F.Supp. 1078, 1093 n.22 (D.N.J.1980). As has been previously discussed in this opinion, however, the FTCA bars imposing liability on the

United States for the negligent acts of an independent contractor.

6. While plaintiff does not argue directly that maintaining a safe workplace and conducting safety inspections are nondelegable duties, it should be noted that a "nondelegability" theory also fails in the instant case. "Nondelegability" rests on a theory of absolute or strict liability, a theory foreclosed under the FTCA. *See* 28 U.S.C. § 1346(b) (1976). *See, e.g., Laird v. Nelms*, 406 U.S. at 799, 92 S.Ct. at 1900; *Dalehite v. United States*, 346 U.S. at 45, 73 S.Ct. at 972.

for the safety of GHC's employees to GHC through contractual provisions, it cannot be held liable for failing to supervise GHC's construction at the National Visitor Center. Retaining the right to inspect the construction project to ensure compliance with contract specifications imposes no duty on the Government to provide safe working conditions or to conduct safety inspections of the construction site.[7] *See* General Provisions of the United States-GHC Construction Contract, cls. 12, 34. *See, e.g., Gibson v. United States*, 567 F.2d 1237 (3d Cir. 1977), *cert. denied*, 436 U.S. 925, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978). Accordingly, plaintiff cannot prevail on any theory of direct liability based on the Government's failure to supervise or inspect GHC's performance on the construction site.

Since plaintiff cannot successfully maintain any theory of liability against the United States under the FTCA, plaintiff's claims, as well as his wife's related claim for loss of consortium, must be dismissed. An Order consistent with this opinion will be entered this date.

---

**7.** The District of Columbia Construction Regulations, which impose the duty on the employer for maintaining a safe workplace and making inspections of the construction site, buttresses the conclusion that the Government had no legal obligations to the employees of GHC for supervision of the construction at the National Visitor Center.