**PAUL MAXIMIN, Plaintiff**

v.

**RUDY RIVERA and MERIDIAN ENGINEERING, INC., Defendants**

Civil No. 860/1988

**HAZEL JAMES and ANDREW JAMES, Plaintiffs**

v.

**MERIDIAN ENGINEERING, INC., Defendant**

Civil No. 944/88

Territorial Court of the Virgin Islands

Div. of St. Croix

February 20, 1990

CHARLES HUSBANDS, ESQ., St. Croix, V.I., *for plaintiffs*

R. ERIC MOORE, ESQ. (LAW OFFICES OF R. ERIC MOORE), St. Croix, V.I., *for defendant Meridian Engineering, Inc.*

ELTMAN, *Judge*

## MEMORANDUM OPINION

These consolidated cases are before the Court on the motion for summary judgment of the defendant, Meridian Engineering, Inc. ("Meridian"). Initially, by order dated April 19, 1989, summary judgment was denied. The matter then was certified for interlocutory appeal on the issue of whether the financial incompetence of a negligent independent contractor would be a sufficient basis for holding its employer liable. Because Meridian failed to timely proceed, the Appellate Division of the District Court denied leave to appeal. D.C. Civil No. 1989-156, August 19, 1989. However, this court, acting sua sponte, has reconsidered its earlier ruling denying summary judgment and, for the reasons discussed below, holds that Meridian is not liable for the negligence of its independent contractor.

## FACTS

On February 9, 1987, a truck owned and operated by the defendant Rudy Rivera ("Rivera"), collided with a car operated by Hazel James, whose passenger was Paul Maximin. It is undisputed that, at the time of the accident, Rivera was hauling asphalt in his truck as an independent contractor employed by Meridian. Both Maximin and James claim injuries from Rivera's negligence. Andrew James, Hazel's husband, has filed a loss of consortium action.

The plaintiffs assert that Rivera's negligence[1] should be imputed to Meridian for three reasons: 1) Meridian controlled the manner in

---

[1] Rivera is sued only by Maximin, in Civil No. 860/88, and default was entered against him on January 19, 1989.

which Rivera transported asphalt, 2) transporting asphalt is an inherently dangerous and ultra-hazardous activity, and 3) Rivera was uninsured and otherwise financially irresponsible and that "Meridian had a duty to guard against the risk of uncompensated injury to innocent third parties." (Amended complaint, Civ. 860/88).

## DISCUSSION

■ The general rule in this jurisdiction is that a principal is not liable for the torts of an independent contractor. Restatement of Torts, Second, § 409; Gibson v. Sullivan Trail Coal Co., 21 V.I. 374 (D.V.I. 1985). Several exceptions to this rule are recognized: 1) where the independent contractor acts pursuant to orders or directions negligently given by the employer (§ 410), 2) where the work is inherently dangerous (§ 427) or abnormally dangerous (§ 427A), and 3) where the employer negligently selects an incompetent contractor (§ 411).

■ With respect to the first claimed basis for liability, Meridian has established by unrebutted affidavits that prior to the accident it had satisfactorily employed Rivera as an independent contractor, licensed to drive, and that Meridian did not control his route of travel or other relevant incidents of his work. Since the plaintiffs have not responded with countervailing evidence on this issue, no genuine issue of fact exists to be determined. Celotex Corp. v. Catrett, 477 U.S. 318 (1986); Anderson v. Liberty Lobby, 477 U.S. 242 (1986).

■■ The claim that the carrying of asphalt is an abnormally dangerous or ultrahazardous activity is completely without basis and is inconsistent with the plaintiffs' negligence theory in any event. Jennings v. U.S., 530 F. Supp. 40 (D.C. 1981). The criteria for an abnormally dangerous activity[2] manifestly do not apply in this cir-

---

[2] Restatement of Torts, Second, § 520

Abnormally Dangerous Activity

In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

cumstance, in which a truck driver supposedly failed to yield the right of way at an intersection. The improper operation of any motor creates the same hazard. See, e.g., Hixon v. Sherwin-Williams Co., 671 F.2d 1005, 1010 (7th Cir. 1982).

The only remaining issue is whether the financial irresponsibility of Rivera rendered him "incompetent" for § 411[3] purposes. It is conceded by Meridian that the evidence would establish that, at the time of the accident, Rivera did not have liability insurance on his truck and that he is otherwise effectively judgment-proof.[4]

Comment (g) to § 411 provides:

> *Financial responsibility.* The rule stated in this Section makes the employer responsible only for his failure to exercise reasonable care to employ a contractor who is competent and careful. It has no application where the contractor, although competent and careful, is financially irresponsible.
>
> Cases are lacking in sufficient number to deal with the question of whether the employer may ever be responsible to any third person for his failure to exercise care to employ a contractor who is financially responsible, and therefore able to respond, by liability insurance or otherwise, for any damages which he may inflict by his tortious conduct. The Institute expresses no opinion that there is, or that there is not, any obligation upon the employer.

In the absence of a Restatement pronouncement or any applicable local law, the court is guided by the rules of common law as generally understood and applied in the United States. 1 V.I.C. § 4.

While the issue of financial irresponsibility of an independent contractor has not generated an abundance of reported decisions, all of those found, with one exception, hold that tort liability does not thereby attach to the employer. Matsunaka Electric Association v.

---

(f) extent to which its value to the community is outweighed by its dangerous attributes.

[3] Restatement of Torts, Second, § 411
Negligence in Selection of Contractor
An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor
(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
(b) to perform any duty which the employer owes to third persons.

[4] For this reason, counsel for the plaintiffs has stated his intention to dismiss as against Rivera if Meridian prevails on summary judgment.

Johnson, 386 P.2d 698 (Alaska 1963); Coleman v. Silverberg Plumbing Co., 69 Cal. Rptr. 158 (1968); Reid v. United States, 421 F. Supp. 1244 (D. Cal. 1976); Hampton v. McCord, 232 S.E.2d 582 (Ga. 1977); Stone v. Pinkerton Farms, Inc., 741 F.2d 941 (7th Cir. 1984); Cassano v. Aschoff, 543 A.2d 973 (N.J. Super. Ct. App. Div. 1988), cert. denied 550 A.2d 476 (N.J. 1988).

The plaintiffs rely on the single case of Becker v. Interstate Properties, 569 F.2d 1203 (3d. Cir. 1977), cert. denied 436 U.S. 906 (1978). There, in a diversity action, the Third Circuit reversed an award of summary judgment to the defendant, predicting that New Jersey courts would hold a developer liable to an injured employee of an insolvent or underinsured subcontractor. Over a strong dissent, the majority in Becker relied on dictum from a New Jersey decision which had suggested such a result. Majestic Realty Associates, Inc. v. Toti Contracting Co., 153 A.2d 321 (N.J. 1959). Following Becker, however, the Appellate Division of the New Jersey Superior Court explicitly rejected the views expressed both in dictum in Majestic and in the holding of Becker. Cassano v. Aschoff, supra. As a result, there now appears to be no jurisdiction in which § 411 liability would be imposed on the employer of a financially irresponsible contractor.

Cogent public policy arguments do support the abrogation of the immunity of a principal where the contractor is judgment-proof. Here, the plaintiffs are innocent victims, who, unlike Meridian, could not have foreseen the risk involved in having an uninsured contractor traveling the public highways. Imputing liability to Meridian would shift the burden of loss from the innocent victim to the party able not only to foresee and to guard against the loss but also to better bear it. Becker, supra at 1209. Moreover, Meridian benefits, actually or potentially, by being able to hire an uninsured asphalt hauler and thereby to lower its costs and increase its profits.

But compelling policy considerations also warrant the contrary result reached here. First, Rivera's lack of liability insurance has no causal relationship to his alleged negligence. Second, it is significant that this jurisdiction no longer has a compulsory motor vehicle insurance law. Act No. 5107, § 4 (November 2, 1985). In other words, there is no requirement that any driver in this territory be financially responsible. Indeed, even before the insurance calamity precipitated by Hurricane Hugo, the extreme difficulty of procuring insurance, its frightful cost and the small percentage of drivers who maintain insurance all were matters of common knowledge within this community and proper subjects of judicial notice. Fed. R. Evid. Rule 201(b).

24

■ Perhaps the most important reason for not considering lack of insurance or other assets as a form of incompetence is the recognition that to do so probably would render many small independent operators with limited resources unable to secure jobs in the construction industry. Were the traditional rule of immunity to be abrogated in these circumstances, companies such as Meridian would be less inclined to deal with those of relatively marginal or modest circumstances and likely would turn instead to more well-capitalized operators. The salutary policy of promoting local entrepreneurship would be stifled, not promoted, by accepting the plaintiffs' expansionist view of liability.

A full exploration of the economic and social consequences of imposing liability on the employer of a financially incompetent contractor should properly be a matter of legislative concern rather than judicial pronouncement. Absent such legislative guidance, and in consideration of the weight of authority in other jurisdictions, summary judgment will be granted to Meridian.

## ORDER

For the reasons expressed in the memorandum opinion of even date, it is hereby

ORDERED that the April 19, 1989, order herein denying summary judgment is vacated; and it is further

ORDERED that the motion of Meridian Engineering, Inc. for summary judgment is granted.