171 So.2d 598 (1965)
Philip C. SOMERS, Appellant,
v.
Robert V. MEYERS and William A. MEYERS, co-partners, doing business as the Riviera Country Club and Driving Range, Appellees.
No. F-457.
District Court of Appeal of Florida. First District.
January 28, 1965.
Rehearing Denied March 1, 1965.
*599 Brass, Strong, Judge & Stern, Daytona Beach, for appellant.
Warren H. Cobb, of Howell, Kirby, Montgomery & Sands, Daytona Beach, for appellees.
STURGIS, Chief Judge.
This is an appeal from a summary final judgment for defendants in a negligence action arising out of an accident involving a dump trailer-tractor, operated by plaintiff, which came in contact with electric power lines located on defendants' business premises, thus causing electric current to be transmitted through said trucking equipment and into plaintiff's body, resulting in injuries for which he claimed damages.
The complaint charged, in substance, that defendants permitted a power company to run an energized and uninsulated high-tension electric power line across their golf course and thereafter contracted with plaintiff's employer, not a party to this cause, to perform certain work upon the golf course in the vicinity of said power line; that in performing such work plaintiff operated a dump truck of such height when elevated that defendants should have known it would probably come into contact with said power line; that defendants negligently failed to warn the power company that said work was to be performed or to warn the plaintiff or his employer that said high-tension wires were uninsulated; and that as a proximate result of said negligence the dump truck operated by plaintiff came in contact with said wires and conducted electric energy into plaintiff's body, causing him to suffer severe bodily injuries and other losses for which he sought damages. Defendants' answer denied the alleged negligence, asserted that plaintiff assumed the risk, and charged the plaintiff with contributory negligence.
Interrogatories were addressed to the plaintiff and defendants and their answers filed. Requests for admissions were addressed to the defendants and their responses filed. The depositions of the plaintiff and defendants and of several witnesses were taken and filed.
Thereupon the defendants moved for summary judgment on the ground that the pleadings, depositions and proofs show that there is no genuine issue of material fact, and that they were therefore entitled to judgment as a matter of law. The motion was granted and summary final judgment entered, hence this appeal.
Appellant contends that the pleadings and proofs do show the existence of a genuine issue of fact, first, on the question of whether the accident was foreseeable by defendants, it being asserted that if such is the case, the duty devolved on defendants to warn plaintiff of the allegedly dangerous condition of the premises resulting from the location thereon of said uninsulated and energized high-tension electric power lines, and secondly, on the question of whether the pleadings and proofs show that plaintiff was guilty of contributory negligence as a matter of law.
Treating the pleadings and proofs in the light most favorable to appellant, against whom the summary judgment was entered, it appears that since November 1953 defendants have operated a golf course on the premises and during that period said powerline poles and uninsulated high-tension power lines have been located thereon and transmitting electricity; that defendants did not know that the wires were not insulated or that they were high-tension electric wires; that in 1963 defendants engaged upon a project to improve the greens and *600 fairways of said golf course and contracted with plaintiff's employer to perform part of the work. On August 29, 1963, the plaintiff, in the course of employment, was operating a dump truck in carrying a load of sand to one of the greens. In dumping the sand on the green he elevated the dump trailer which came in contact with the electric power line which at that point was strung approximately 26 feet above the ground at the front of the truck and 30 feet above the ground at the rear thereof; the trailer thereby became a conduit for the electricity which flowed from thence into plaintiff's body. The plaintiff had descended from the truck in order to manually operate a broken cable thereon which was part of the dump trailer mechanism, and when the accident occurred was under the trailer in the act of releasing the air brake thereon so as to be able to move it out of a hole in which it was stuck at the time. There were no eyewitnesses and plaintiff does not remember precisely when his body received the electric shock. From the time he got out of the cab until he crawled under the trailer to bleed the air brake, he never looked up.
Plaintiff had been a truck driver for approximately eight years and for four years prior had been an automotive mechanic in the Air Force. For approximately six months prior to the accident he was continuously employed as driver of the dump trailer-tractor in suit. While his employer gave him no warning concerning the electric wires at defendants' job site, he had warned him generally, as plaintiff testified by his deposition, "to watch low wires, and stuff like that." The occasion on which the accident occurred is the only time he "was over in that part of the field." Plaintiff also testified that he observed the electric power lines "When I first pulled in on them, going in on the mound, I saw them up there," and there was nothing to obscure his vision of the lines as he approached the site of the golf green ("mound") and as he performed the work thereon. He does not wear glasses or have defective vision. He also testified that he did not have any idea whether the wires were insulated but "just figured they were insulated." Upon being asked whether it occurred to him that the wires were low enough for a trailer in a raised position to come in contact with them, he answered: "No, it didn't occur to me. I'll tell you, I just  I never paid no attention to them, really, because I figured they was insulated or something. I mean, you  if there's a telephone wire going into a house or something, it's insulated, or anything like that, so I never give it another thought, really." Plaintiff dumped the load of sand as soon as he reached the green by raising the dump trailer to full height. When attempting to move out, the tractor and trailer got stuck to the extent that the wheels were down in the dirt, and then, in attempting to get the tractor and trailer unstuck, the plaintiff, who had previously lowered the trailer halfway down, raised it back to full height and it was in that position when the accident occurred. Plaintiff testified that he did not think he had succeeded in moving the tractor-trailer more than several feet.
Plaintiff also testified that earlier in the morning before going on defendants' job the dump trailer sustained a broken cable. Upon being asked what he had to do as a result thereof, he said: "Just there was a lever hanging down, come off on your transmission, and you had to get out and move it with your hand, that's all, which ordinarily, I mean, there was a  just like a cable up in the cab you do it with, but it broke off down there, and you could work it manually from the outside."
The defendants admitted that the subject power line served some function on defendants' golf course. As heretofore noted, however, defendants denied having known that these were high-tension wires or uninsulated. Defendant Robert V. Meyers testified by deposition that the day before the accident plaintiff Somers was on the same green where it occurred, that the power line was located on the back of the green, and that he pointed it out to the plaintiff *601 and said to him, "We don't want to get back too far"; that plaintiff made no response; that it was a natural thing for him to mention these things because plaintiff was operating an exceptionally large truck which could possibly come in contact with the wires.
A person who has actual or constructive knowledge of a dangerous condition of his premises, and who is having work done thereon by an independent contractor, owes a duty to give warning of the danger to the employees of the contractor or use ordinary care to furnish protection against such danger. See Florida Power & Light Co. v. Robinson, 68 So.2d 406 (Fla. 1953), and cases cited therein. This rule is subject to the underlying principle, however, that the defendant's knowledge of the danger must be superior to that of the employee, the business invitee.
In the controlling case of Quinnelly v. Southern Maid Syrup Company, 164 So.2d 240 (Fla.App. 1964), the district court of appeal sustained dismissal of a complaint for failure to state a cause of action in which the material facts alleged were closely analogous to those in the case on review. The plaintiff there was the employee of a contractor who had engaged to do construction work for defendant on the latter's property. It was plaintiff's theory that the defendant had a non-delegable duty to provide the plaintiff, a business invitee, with a safe place to work; that defendant had a power company install a high-voltage electric power line in the area and energize the wires at a time when there was no necessity to have them energized. It was alleged that defendant was negligent in failing to have the wires de-energized while plaintiff was working and in failing to warn plaintiff of the potential danger, and in failing to properly supervise and inspect the work being done on the premises; that plaintiff was injured when he touched a boom on a truck crane which, being operated by plaintiff's fellow employee, had come in contact with the energized wires, the plaintiff thereby receiving serious electrical burns and shock.
The facts in the instant case more strongly support the summary final judgment appealed than do those in the cited case. We note that in Quinnelly it was a fellow employee who had exclusive control of and raised the boom into the wires, whereas in the case on review the plaintiff himself was in exclusive control of the elevatable trailer of his dump truck and raised it into the wires; Quinnelly apparently did not see the wires prior to his injury, whereas plaintiff Somers in this case admitted that he actually saw the wires immediately prior to his injury and not only ignored same but obviously made no attempt to keep his trailer out of the wires as he lifted it; and in Quinnelly the defendant property owner requested the power company to locate the wires where they did, whereas in the instant case the wires were owned by the power company and located on defendants' property before they acquired title.
Under facts such as are involved in this case, the plaintiff's duty to expect and anticipate the potential hazard of an obvious danger is at least as great as that of the defendant landowner. Quinnelly v. Southern Maid Syrup Company, supra; Lonis v. Flagler Federal Savings & Loan Association, 164 So.2d 41 (Fla.App. 1964). The proofs herein reveal no latent or concealed danger, but rather wires which were seen by plaintiff prior to bringing his truck into contact with them. In this jurisdiction it is presumed that the inherent dangers of electrically energized wires is known to all except those of tenderest age. Plaintiff Somers was 32 years old. There was no duty on the part of defendants to warn him that power lines 26 to 30 feet above the ground might be uninsulated. Richmond v. Florida Power & Light Co., 58 So.2d 687 (Fla. 1952).
The judgment appealed is
Affirmed.
RAWLS, J., and PATTEN, Associate Judge, concur.