Christopher PALAIDIS, Plaintiff,

and

Steve Lewis, Plaintiff,

v.

UNITED STATES of America, Defendant/Third Party Plaintiff,

v.

HENRY ANGELO & SONS, INC., Third Party Defendant.

Nos. 80–86–Orl–Civ–Y, 80–128–Orl–Civ–Y.

United States District Court,
M.D. Florida,
Orlando Division.

May 27, 1983.

Mark S. Feldheim, Asst. Director, Torts Branch, Dept. of Justice, Washington, D.C., Kendell W. Wherry, Asst. U.S. Atty., Orlando, Fla.; Captain Harold Bistline, Patrick Air Force Base, Fla., for defendant U.S.

Richard Nichols, Coral Gables, Fla., for plaintiff Lewis.

James H. Nance, Melbourne, Fla., for plaintiff Palaidis.

Michael A. Miller, Orlando, Fla., for third party defendant.

1. 28 U.S.C. § 2671 et seq.

## AMENDED MEMORANDUM OPINION

GEORGE C. YOUNG, Senior District Judge.

On December 16, 1977, the plaintiffs, Christopher Palaidis and Steve Lewis, were severely burned and permanently injured while working as painters for an independent contractor when the metal scaffold they were pushing from hangars 986 to 985 at Patrick Air Force Base, Brevard County, Florida, came into contact with an overhead electrical power line. Plaintiffs brought this action against the United States Government under the Federal Tort Claims Act.[1] The United States filed a third party complaint against Henry Angelo and Sons, Inc., plaintiffs' employer, for indemnification of any recovery by plaintiffs from the government. This cause came on for non-jury trial before this Court on March 28 through 30, 1983. Upon consideration of the evidence and arguments of counsel, this Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. On September 21, 1977 the United States (Defendant) awarded Henry Angelo and Sons, Inc. (Henry Angelo) Contract FO8650–77–90311 to paint the exterior of 20 base facilities at Patrick Air Force Base for the sum of $33,559.76. Henry Angelo was an independent contractor performing the work required under such contract.

2. Christopher Palaidis, as representative for Henry Angelo, attended the preperformance conference on October 18, 1977. Henry Angelo commenced exterior painting of the 20 base facilities on October 19, 1977.

3. Hangars 986 and 985 were two of the 20 base facilities at Patrick Air Force Base which were to be painted by Henry Angelo under its contract with Defendant. The two hangars are located side by side and such that the hangar doors face directly south, onto a parking lot. Hangar 985 is directly to the east of Hangar 986. The distance between 986 and 985 is 40 feet. At the time of plaintiffs' accident, electric

power to service 986 and 985 came off the main power from a pole (the main power line pole) located at the south side of the parking lot. From that pole, the power line ran north to a pole (the dip pole) located between the two hangars, 11 feet 2 inches from the west edge of 985 and 28 feet 10 inches from the east edge of 986, and then split to service each building. The power line between the two poles was composed of number four gauge bare copper wire and carried over 7,000 volts of electricity. The height of the two conductors on each of the two poles was 32 feet 6 inches and 29 feet 9 inches, with the span between the two poles measuring 265 feet. The hangar doors were 32 feet 6 inches high, the metal scaffold was 29 feet 9 inches high and the lowest part of the electrical line was 22 feet 6 inches high. At the point where the scaffold came into contact with the power line, the power line was 27 feet, 6 inches high.

4. At the time of the accident defendant owned and operated the power line running between the main power pole and the dip pole. There were no signs posted to warn that the high voltage power line was uninsulated and the painters were given no oral warnings to that effect.

5. On the morning of December 13, 1977, a Tuesday, Henry Angelo started painting 986 and began painting 985 on December 15, 1977. On December 15, 1977 employees of Henry Angelo had finished painting the east side of 986 and the west side of 985 (the area between the two hangars and in the immediate vicinity and on two sides of the dip pole).

6. Friday, December 16, 1977 started out as a wet day and for that reason Henry Angelo employees could not commence work until approximately 9:30 A.M. That morning the employees were using a metal scaffolding to paint the top of the hangar doors and the track controlling said doors of hangar 986. Henry Angelo had rented the scaffold from Brevard Rentals and had erected it at the job site. The base of the scaffold measured six feet square. After a lunch break, painting was resumed at approximately 12:30 P.M. with the sun directly overhead. The painters had completed

their work on the top of the hangar doors and door track of 986 just before lunch and were about to begin painting the top of the hangar doors and door track of 985.

7. Palaidis, who was supervisor on the job, and Lewis began moving the scaffolding east toward hangar 985. Neither Palaidis nor Lewis looked up and neither had noticed that the scaffold was higher than the power line at that spot.

8. As plaintiffs were moving the scaffold, the top of the scaffold came in contact with the overhead power line. Electricity from the power line traveled down through the scaffold and into plaintiffs, seriously burning them.

9. Palaidis was born April 23, 1937 and had worked for Henry Angelo on various painting contracts from 1967 to the time of the accident, when he was serving as job supervisor. Palaidis suffered severe burns to his scalp, hip and leg. He now needs braces to stand up and uses crutches to walk.

10. Lewis was born March 21, 1955 and had had 2½ years of painting experience before becoming employed with Henry Angelo. He had been working with Henry Angelo for two months before the accident but had had no painting experience involving scaffolds prior to starting to paint with Henry Angelo. Lewis suffered severe burns to his scalp and arm, leaving him permanently injured.

11. Henry Angelo had delegated the responsibility of carrying out appropriate safety measures to Palaidis on this particular contract. On two occasions, both within a month prior to the accident, defendant had to warn Henry Angelo employees of the danger of painting too close to electric wires. On one occasion, defendant's foreman, Clifford Guerry, discovered a painter on a ledge leaning over and painting within a few inches of an electric connection. On another occasion, Palaidis and another painter working with a 20 foot aluminum ladder, were found in a 12 foot by 15 foot enclosure located next to building 313. Even though signs were posted warning that high voltage transformers were located

inside the enclosure, the painters had not requested a power outage prior to painting inside that area.

12. Under the contract, Henry Angelo was required to provide for the safety of its employees by complying with the safety requirements of the Corps of Engineers Manual, EM 385–1–1. In pertinent part, the contract provides:

"(a) In order to provide safety controls for protection to the life and health of employees and other persons; for prevention of damage to property, materials, supplies, and equipment; and for avoidance of work interruptions in the performance of this contract, the Contractor shall comply with all pertinent provisions of Corps of Engineers Manual, EM 385–1–1, dated 1 June 1977, entitled 'General Safety Requirements', as amended, and will also take or cause to be taken such additional measures as the Contracting Officer may determine to be reasonably necessary for the purpose."

Defendant's Exhibit No. 10, Clause 7–602.-42, Armed Services Procurement Regulation (June 1977).

In pertinent part, the Corps of Engineers Manual provides:

"22.J.03. Extreme caution shall be taken where metal scaffolds are used in the vicinity of energized electrical circuits.

22.J.29. When free-standing mobile scaffold towers are used, the height shall not exceed four times the minimum base dimension."

Defendant's Exhibit No. 11, General Safety Requirements Manual, EM 385–1–1 (1 June 1977).

■ 13. Henry Angelo employees were invitees of defendant, and, as such, defendant landowner had the duty of using due care in maintaining its premises during the time plaintiffs were painting the exteriors of the 20 base facilities and to warn plaintiffs of hidden dangers known to the owner but not known to plaintiffs. *Quinnelly v. Southern Maid Syrup Company,* 164 So.2d 240 (2d Fla. DCA 1964). Plaintiffs have not proved that defendant United States breached such duty. The existence of the uninsulated overhead power line would have been clearly visible to plaintiffs if they had been exercising reasonable care for their own safety and had looked up. Defendant breached no duty of care in failing to give plaintiffs warning of the location of the power line.

■ 14. Plaintiffs were not engaged in an inherently dangerous activity. Even assuming, arguendo, that plaintiffs had been engaged in an inherently dangerous occupation, defendant still would have breached no duty of care since plaintiffs have proved no positive act of negligence or negligent omission on the part of defendant which caused plaintiffs' injuries.

15. Employees of Henry Angelo, including Palaidis, had been warned by defendant on two occasions, within a month prior to the accident, of the danger of painting close to electrical connections. Palaidis had had nearly 10 years of work experience with Henry Angelo prior to the accident, much of that experience involving government contracts, and was in charge of painting 986 and 985.

■ 16. Plaintiffs were negligent in failing to comply with two provisions of the Corps of Engineers Manual. Plaintiffs failed to exercise extreme caution when using a metal scaffold in the vicinity of the power line and the scaffold height did exceed by five feet nine inches the maximum height allowed—four times the minimum base dimension, or 24 feet. If the scaffold had been only 24 feet high it would not have contacted the wire at the 27 feet 6 inches high point of impact.

■ 17. Plaintiffs were also negligent in failing to exercise reasonable care for their own safety, by not noticing the overhead power line. They had been painting near the dip pole the day before the accident and had been painting 986 for three days prior to the accident.

18. If plaintiffs had noticed the power line, they could have avoided injury either by dismantling the top portion of the scaffold or by requesting a power outage.

19. The failure of plaintiffs to exercise reasonable care for their safety was the sole proximate cause of the accident.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and the subject matter of this case pursuant to 28 U.S.C. § 1346(b), 2671–2680.

2. Plaintiffs complied with the requirements of 28 U.S.C. § 2675 by filing the requisite Administrative Claims with the Air Force, waiting at least six months and then filing these suits, which were later consolidated.

3. Under Florida law, defendant breached no legal duty owed to plaintiffs. Generally, a landowner-employer has a duty to invitees, such as plaintiffs, to "use ordinary care to maintain the premises in a reasonably safe condition for use in a manner consistent with the invitation and to warn of *latent* perils which are known or should be known to the owner but which are not known to the invitee or which, by the exercise of due care, could not be known to him." *Rice v. Florida Power & Light,* 363 So.2d 834, 839 (3d Fla. DCA 1978) (emphasis in original). Generally, if a landowner employer complies with this duty, he is not liable for injuries suffered by employees of the independent contractor. An exception to this general rule is where the employees are engaged in an inherently dangerous activity. *Orr v. U.S.,* 486 F.2d 270, 275 (5th Cir.1973). Work is inherently dangerous when "in the ordinary course of events its performance would probably, and not merely possibly, cause injury if proper precautions were not taken." *Florida Power and Light v. Price,* 170 So.2d 293, 295 (Fla.Sup.Ct.1964). Defendant had no legal duty to warn plaintiffs of the overhead power line since it was clearly visible to plaintiffs. Plaintiffs were not engaged in inherently dangerous work and thus defendant did not owe plaintiffs a higher degree of care. *See Somers v. Meyers,* 171 So.2d 598 (1st Fla. DCA 1965); *Quinnelly v. Southern Maid Syrup Company,* 164 So.2d 240 (2d Fla. DCA 1964). In *Somers* the landowner-employer had hired an independent contractor to do work on a golf course. There were power lines 26 and 30 feet above one of the greens. Plaintiff, employee of the independent contractor, was dumping a load of sand onto the green when the trailer of his dump truck came in contact with the wire and plaintiff was electrocuted. The appellate court affirmed the trial court's order granting defendant's summary judgment, stating:

"Under the facts such as are involved in this case the plaintiff's duty to expect and anticipate the potential hazard of an obvious danger is at least as great as that of the defendant landowner. *Quinnelly v. Southern Maid Syrup Company,* supra; *Lonis v. Flagler Federal Savings & Loan Association,* 164 So.2d 41 (Fla.App.1964). The proofs herein reveal no latent or concealed danger, but rather wires which were seen by plaintiff prior to bringing his truck into contact with them. In this jurisdiction it is presumed that the inherent dangers of electrically energized wires is known to all except those of tenderest age. Plaintiff Somers was 32 years old. There was no duty on the part of defendants to warn him that power lines 26 to 30 feet above the ground might be uninsulated. *Richmond v. Florida Power & Light Co.,* 58 So.2d 687 (Fla.1952).

171 So.2d at 601.

In *Quinnelly* the landowner-employer was constructing a syrup mill on his property and had employed Industrial Equipment Company, Inc. which in turn employed plaintiff as boiler maker. At the time of the accident, the landowner had already installed a high voltage overhead power line. A fellow employee of plaintiff, operating a truck crane, allowed the boom on the truck to come into contact with the power line. When plaintiff touched the boom he received serious electrical burns and shock. Plaintiff claimed that defendant landowner was negligent in energizing the power line at a time when no electricity was being taken off the line. On appeal the trial court's order dismissing plaintiff's second amended complaint for failure to state a cause of action was affirmed. The court stated:

"There is no superior knowledge of danger on the defendant's part existing in this case. There is no allegation showing breach of a duty owed the plaintiff. The allegations do not show any injuries as a proximate result of any conduct of the defendant. The instrumentality actually causing the injury was under the exclusive control of third persons. It was not the duty of the land owner to furnish the plaintiff a safe place to work, but to use due care in maintaining his premises. Notice or warning is not required where the dangerous condition is open and obvious to a person who is exercising reasonable care for his own safety. *Trimyer v. Norfolk Tallow Company,* 192 Va. 776, 66 S.E.2d 441. The existence of an open and obvious power line is not an unsafe condition in and of itself. The defendant land owner was not engaged in a dangerous occupation; neither was the plaintiff. The trial court properly dismissed the second amended complaint. The judgment is therefore affirmed."

164 So.2d at 242–43.

 Under Florida law the two warnings of the danger of painting close to electrical connections, which were given by defendant to Palaidis, the job supervisor, and other employees of Henry Angelo, within a month prior to the accident are imputed to plaintiff Lewis. In *Lowe v. United States,* 466 F.Supp. 895 (M.D.Fla.1979), *affirmed,* 611 F.2d 76 (5th Cir.1980), (applying Florida law), the government safety inspector had advised contractor's superintendent to correct a set of concrete steps located at one end of a trailer used to store tools at the job site. Plaintiff employee of the subcontractor suffered a ruptured disc when the steps rolled out from under him and he fell, striking his back. This Court stated:

"[T]he court finds as the trier of fact that the efforts undertaken by the government safety inspector to have Briscoe Company correct the steps were both sufficient and reasonable under the circumstances. Any duty owed by the defendant to the plaintiff was completely discharged by the warning given plaintiff's employer to correct the defective steps."

*Id.* at 899. *See Lake Parker Mall, Inc. v. Carson,* 327 So.2d 121 (2d Fla. DCA 1976), *cert. denied,* 344 So.2d 323 (Fla.1977)."

■ Under the circumstances of this case defendant breached no legal duty owed to plaintiffs. Defendant is therefore not liable to plaintiffs for their injuries. Accordingly, no indemnification may be recovered from the third party defendant, Henry Angelo & Sons, Inc.

4. Judgment will be entered for defendant.

### ORDER

This cause came on for consideration on plaintiffs' motion for amendment of judgment and/or entry of new judgment/new trial and defendant's response thereto. After consideration of legal memoranda filed by counsel, this Court is of the opinion that Finding of Fact # 15 and Conclusion of Law # 3 should be amended to reflect the present law in Florida on the effect of the warning given by defendant to Palaidis, job supervisor for Henry Angelo, and to other Angelo employees, of the danger of painting close to electrical connections. In all other respects, plaintiffs' motion will be denied. Accordingly, it is

ORDERED that an amended Findings of Fact and Conclusions of Law will be filed simultaneously herewith.