**W.M. SCHLOSSER COMPANY, INC., Appellant,**

v.

**MARYLAND DRYWALL COMPANY, INC., Appellee.**

**DISTRICT OF COLUMBIA, Appellant,**

v.

**Andre ROBERTSON, et al., Appellees.**

**Nos. 92–CV–518, 92–CV–538.**

District of Columbia Court of Appeals.

Argued June 10, 1994.

Decided March 21, 1996.

Terence J. O'Connell, Rockville, MD, for appellant in No. 92–CV–518.

William J. Carter, with whom Thomas L. McCally was on the brief, Washington, DC, for appellee in No. 92–CV–518.

Edward E. Schwab, Assistant Corporation Counsel, with whom John Payton, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant in No. 92–CV–538.

Luiz R.S. Simmons, Silver Spring, MD, for appellee in No. 92–CV–538.

Before WAGNER,* Chief Judge, and FARRELL and KING, Associate Judges.

Opinion for the court by Associate Judge KING.

Opinion by Associate Judge FARRELL, concurring in part and dissenting in part at p. 654.

KING, Associate Judge:

These consolidated appeals stem from an injury sustained by Andre Robertson at a construction site in Southeast, Washington. In No. 92–CV–538, the District of Columbia ("District") appeals the trial court's denial of its motion for judgment as a matter of law after a jury returned a verdict in Robertson's favor. In No. 92–CV–518, the W.M. Schlosser Company ("Schlosser") appeals the entry of judgment in favor of the Maryland Drywall Company ("Maryland Drywall"), denying Schlosser's indemnification claim. We conclude the trial court erred in denying the District's motion for judgment as a matter of law and in granting judgment in favor of Maryland Drywall. Accordingly, we reverse in both appeals.

## I.

The basic facts are not in dispute. The District of Columbia owns an apartment building at 7th and H Streets, S.E., known as the Arthur Capper Facility, which houses low-income, public housing residents. The

District entered into a contract with Schlosser to renovate the building.[1] The contract gave Schlosser, the general contractor, complete control of the construction project and responsibility for obtaining the required licenses and permits; it also required Schlosser to comply with all regulations, including proper safety and health safeguards to protect the workers and the public. Schlosser entered into contracts with subcontractors for the remodeling project, including one with the Maryland Drywall Company ("Maryland Drywall").

On March 13, 1987, Andre Robertson, an employee of Maryland Drywall, was working with the stock crew at the Capper construction site. As he was sweeping the floor, he fell through a door-sized opening three-stories high, and sustained serious injuries that rendered him a quadriplegic.[2] Robertson filed suit against the District and Schlosser, alleging that both had breached their duty to provide a safe work place.[3] Schlosser filed a third-party complaint against Maryland Drywall,[4] contending that the contract between Schlosser and Maryland Drywall required Maryland Drywall to indemnify Schlosser. In July 1990, the trial court denied Maryland Drywall's motion to dismiss, ruling that the indemnity provision was clear on its face. Maryland Drywall subsequently filed a summary judgment motion, contending that the contract did not require it to indemnify if Schlosser was also negligent. That motion was also denied.

Prior to trial, Schlosser settled with Robertson for $3,000,000.[5] Maryland Drywall

---

*Judge WAGNER was an *Associate Judge* of this court at the time of argument. Her status changed to *Chief Judge* on June 14, 1994.

1. In its brief, the government observed that the project was "substantial and included removing asbestos, replacing interior walls, installing three new stairwells or stairways, enlarging the windows, electrical and plumbing work, and rehabilitating the entire building."

2. The door-sized openings were designed to be used with staircases to be constructed later. In the meantime, they were used to hoist materials and tools into the building. When not being used for that purpose, the openings were, according to Schlosser, supposed to be protected by a plywood sheet nailed to the frames. The District presented an expert in construction safe-

ty, who testified that Schlosser's safety plan with respect to the door openings did not meet the standards for securing wall openings.

3. Robertson originally filed suit against several other companies. Those suits were later dismissed.

4. The District also filed a third-party claim against Maryland Drywall, contending that the contract between Schlosser and Maryland Drywall required indemnification of the District.

5. Maryland Drywall challenged the settlement, but the trial court ruled the settlement was reasonable.

renewed its contention that it was not liable under the indemnity provision of the contract between Schlosser and Maryland Drywall, and the trial court, reversing itself, ruled that the indemnity provision did not require Maryland Drywall to indemnify Schlosser if Schlosser was negligent.[6] The trial court also determined that the "same legal principles apply as much ... for concurrent negligence." Thus, the trial court ruled that because the indemnity clause did not require Maryland Drywall to indemnify Schlosser if Schlosser's negligence was the proximate cause of the injury, it also did not require indemnity if both parties' negligence proximately caused the injury.

The trial court concluded, however, that there still remained three facts in dispute that "must be determined by the jury.... One, whether [the negligence of] Schlosser was the proximate cause of [Robertson's] injuries; two, whether [the negligence of] Maryland Drywall was the proximate cause ... [and] three, whether [Robertson's] injuries arose out of, resulted from or in connection with the execution of the work provided for in the subcontract." The trial court submitted interrogatories to the jury, and the jury found that Maryland Drywall and Schlosser were both negligent and that each company's negligence proximately caused Robertson's injury. The jury further found that the injuries arose out of or resulted from or were in connection with the execution of the work provided for in the subcontract between Schlosser and Maryland Drywall. Relying on the earlier determination that the contract did not require Maryland Drywall to indemnify if both parties were negligent, the trial court entered judgment in favor of Maryland Drywall. It is that ruling that Schlosser challenges in No. 92–CV–518.

Robertson's remaining claim, against the District, alleged that the District could not delegate its duty to provide a safe work place because the construction work performed by Robertson was an inherently dangerous activity. The jury found that Robertson's job was inherently dangerous and awarded him $6,000,000.[7]

The District appeals the trial court's denial of its motion for judgment as a matter of law, arguing that "the usual hazards of ordinary construction work are not within the 'inherently dangerous activities' doctrine" and that it may delegate safety responsibilities to a general contractor.[8]

Schlosser appeals the trial court's grant of judgment in favor of Maryland Drywall, contending that "terms of an indemnity agreement may be so broad and comprehensive that although it contains no express stipulation indemnifying against a party's own negligence, it accomplishes the same purpose." Schlosser maintains that it is entitled to indemnity because the claim "arose out of the work called for in Maryland Drywall's subcontract and because Maryland Drywall agreed to cover any and all such claims."

## II.

*A. Appeal No. 92–CV–538, District of Columbia v. Andre Robertson*

In reviewing the denial of a motion for judgment as a matter of law, we examine the evidence in the light most favorable to the prevailing party, *Finkelstein v. District of Columbia,* 593 A.2d 591, 594 (D.C.1991) (en banc), "giving them the advantage of every fair and reasonable inference that the evidence may justify." *District of Columbia v. Royal,* 465 A.2d 367, 369 (D.C.1983) (citation omitted). If, applying those standards, we conclude that no reasonable juror could

---

6. As noted, the trial court initially ruled that the indemnification provision was clear on its face and required Maryland Drywall to indemnify Schlosser. In reversing that decision, the trial court, upon further review, concluded that case law provided that "unless the intention is unequivocally expressed in the plainest of words, the law will consider that the parties did not undertake to indemnify one against the consequences of its own negligence."

7. That sum was reduced to $3,000,000 to reflect the amount of the settlement with Schlosser.

8. The District also challenges the trial court's denial of its indemnity claims against Schlosser and Maryland Drywall. Because we hold that in these circumstances there is no liability with respect to the District, we have no need to review the trial court's ruling that the District was not entitled to indemnification.

find liability, then we are obliged to reverse. *See Etheredge v. District of Columbia,* 635 A.2d 908, 918 (D.C.1993) (stating standard and concluding that no reasonable juror could find negligence); *Oxendine v. Merrell Dow Pharmaceuticals, Inc.* 506 A.2d 1100, 1103–04 (D.C.1986) (citations omitted), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990).

■ We first address the question of whether the District remains subject to tort liability despite its construction contract with Schlosser. As we noted, the District was found liable under the theory that because the work performed by Robertson was an inherently dangerous activity, the District was vicariously liable.[9]

■ In this jurisdiction, the general rule "is that when [someone or some entity] hires another to do certain work, reserving no control over either the work or the workmen, a relationship of contractee and contractor exists (as opposed to master and servant) and the contractee is not liable for injuries to a third party resulting from the work of the independent contractor." *Levy v. Currier,* 587 A.2d 205, 209 (D.C.1991) (footnote omitted) (citing *Washington Metro. Area Transit Auth. v. L'Enfant Plaza Prop., Inc.,* 448 A.2d 864 (D.C.1982) ("general rule is that an individual or corporation is not liable for injuries resulting from the work of an independent contractor") (citation omitted)). This general rule encompasses the view that those using independent contractors should not be held responsible for activities they do not control and often lack the knowledge and resources

to direct. *See* RESTATEMENT (SECOND) OF TORTS § 409 cmt. b (1985).

■ Under this rule, however, the District, as the contractee in this case, may be liable if the "work performed by the independent contractor is inherently dangerous."[10] *Levy, supra,* 587 A.2d at 209 (citations omitted). In those circumstances, the duty to use care becomes nondelegable. *See id.; see also District of Columbia v. Howell,* 607 A.2d 501, 504 (D.C.1992) ("one who employs an independent contractor to do work involving a special danger to others ... is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger") (citation and internal alternation omitted); *Lindler v. District of Columbia,* 164 U.S.App.D.C. 35, 38, 502 F.2d 495, 498 (1974) (exception is based on belief that because of the inherently dangerous nature of the work, the contractee should not be allowed to escape liability and is obligated to guard against dangers). Thus, the question we must resolve is whether the construction work being performed by Robertson was inherently dangerous, making the District vicariously liable for any negligence of its independent contractor, Schlosser.

The resolution of "[w]hether a particular kind of work is inherently dangerous is essentially a relative determination based upon the facts of the particular case." *Washington Metro. Area Transit Auth., supra,* 448 A.2d at 868 (citations omitted). In *Vale v. Bonnett,* 89 U.S.App.D.C. 116, 121, 191 F.2d 334, 339 (1951), the United States Court of Appeals for the District of Columbia held that "[d]anger is a relative term. Inherently

---

9. Robertson contends that the District failed to preserve the issue of whether the construction work being performed by him was an inherently dangerous activity. The District responds to that contention by pointing out that it argued, in both its motion for a directed verdict and in its post-trial motion for judgment as a matter of law, that it owed no duty to Robertson. The crux of the District's argument now is that implicit in its argument in the trial court that it owed no duty to Robertson—because it had delegated that duty to Schlosser—is the theory that Robertson's activity was not inherently dangerous. We agree; the District's argument below "can fairly be held to encompass its argument in this court." *Sebastian v. District of Columbia,* 636 A.2d 958, 959 n. 2 (D.C.1994); *see also Mills v. Cooter,* 647 A.2d

1118, 1123 n. 12 (D.C.1994) (argument scarcely mentioned at trial, but emphasized on appeal, was sufficiently articulated in motion for judgment n.o.v. and "parties are not limited to the precise arguments they made below") (quoting *Yee v. City of Escondido, Cal.,* 503 U.S. 519, 534, 112 S.Ct. 1522, 1532, 118 L.Ed.2d 153 (1992)). Therefore, unlike our dissenting colleague, we are satisfied the District preserved this issue.

10. This is premised on the rationale that because of the inherently dangerous nature of the work, the contractee should not be allowed to escape liability and is obligated to contemplate and guard against such dangers.

dangerous may be defined as unusually hazardous." We recently observed that an inherently dangerous activity "is not limited to intrinsically hazardous work," but rather "extends to activities which may be dangerous in the circumstances under which they are performed." *Howell, supra,* 607 A.2d at 505 (citations omitted).

■ Applying these principles to the instant case, we conclude that Robertson has failed to demonstrate that stock crew work at a construction site is an inherently dangerous activity or that it involves "risk, recognizable in advance, of physical harm to others which is inherent in the work itself, or normally to be expected in the ordinary course of the usual or prescribed way of doing it." *Levy, supra,* 587 A.2d at 211 (citation omitted). The stock crew, including Robertson, consisted of construction laborers who stock and clean the construction site building. They are also responsible for carrying tools and materials to craftsmen at the various areas around the construction site. On the day of his accident, Robertson was sweeping trash into piles and loading it into trash containers. As he did so, he stepped backwards falling through the door opening. Under the authorities discussed below, we conclude that no reasonable juror could find that the work performed by Robertson constitutes inherently dangerous activity as that term is defined under these circumstances. *See Vale, supra,* 89 U.S.App.D.C. at 121, 191 F.2d at 339 (noting distinction between an unsafe condition and an inherently dangerous condition).

This case is virtually indistinguishable from *Jennings v. United States,* 530 F.Supp. 40 (D.D.C.1981), where the trial court concluded that working on scaffolding and walkways was not inherently dangerous. There, the plaintiff, employed at a construction site by a contractor, brought an action against the United States, who had hired the contractor, for injuries suffered as the result of a fall from a walkway. The trial court ruled that the plaintiff had failed to sustain his burden of showing "that con-

struction work on scaffolding and walkways is an inherently dangerous activity." *Id.* at 45. The court further ruled that "[i]f working on scaffolding and walkways were held to be an inherently dangerous activity, then all construction projects would be classified as inherently dangerous activities. Such a holding would expand the inherently dangerous activity theory far beyond its proper scope." *Id.* (citation omitted); *see also Palaidis v. United States,* 564 F.Supp. 1397, 1400 (M.D.Fla.1983) (employees of independent contractor who were painting at an air force base were not engaged in an inherently dangerous activity).

We agree with *Jennings* and conclude, as that court did, that if stock crew work at a construction site is considered to be inherently dangerous activity, "then all construction projects would be classified as inherently dangerous activities." *Jennings, supra,* 530 F.Supp. at 45. Imposing liability on the District under these circumstances would indeed "expand the inherently dangerous activity theory far beyond its proper scope." *Id.; see also Gray v. Enserch, Inc.,* 665 S.W.2d 601, 606 (Tex.Ct.App.1984) ("essential question is whether the risk created is so unusual ... as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care"). Because the District had no other independent duty to Robertson,[11] having contractually delegated its duty to the contractor, Schlosser, there is no basis for Robertson's recovery from the District. *See General Elevator Co. v. District of Columbia,* 481 A.2d 116, 120 (D.C.1984) (District owed no duty other than the one it delegated to the contractor).

In sum, viewing the evidence in the light most favorable to Robertson, we hold that as a matter of law, Robertson's activities as a member of the stock crew did not rise to the level of inherently dangerous work. Accordingly, the District is not vicariously liable for Schlosser's negligence that caused the injuries to Robertson, and the trial court erred in

---

11. Robertson contends that by obtaining building permits, the District has assumed liability. We disagree and observe that the provisions relating to obtaining building permits only require that the construction work be in accordance with the applicable regulations and laws.

declining to enter judgment as a matter of law.[12]

### B. Appeal No. 92–CV–518, Schlosser v. Maryland Drywall

 We turn now to Schlosser's claim that the trial court erred in granting judgment in favor of Maryland Drywall. Schlosser contends that "the terms of an indemnity agreement may be so broad and comprehensive that although it contains no express stipulation indemnifying against a party's own negligence, it accomplishes the same purpose." Maryland Drywall maintains that the indemnity agreement does not "specifically indicate by its terms that it would agree to indemnify W.M. Schlosser Company for its own negligence." [13]

 This court has recognized that "[o]ne of the most common, and simple bases of indemnity is a contract that provides for it." *East Penn Mfg. Co. v. Pineda*, 578 A.2d 1113, 1126 (D.C.1990) (citation and internal quotation marks omitted). The indemnity provision of the contract between Schlosser and Maryland Drywall provided:

> The subcontractor shall promptly indemnify and save and hold harmless the General Contractor and the Owner from any and all claims, liabilities and expenses for property damage or personal injury; including death, arising out of or resulting from or in connection with the execution of the work provided for in this Agreement.

An indemnity provision, however, "should not be construed to permit an indemnitee to recover for his [or her] own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties." *United States v. Seckinger*, 397 U.S. 203, 211, 90 S.Ct. 880, 885, 25 L.Ed.2d 224 (1970). If a party "expects to shift responsibility for its negligence ... the mutual intention of the parties to this effect should appear with clarity from the face of the contract." *Id.; see also Royal, supra*, 465 A.2d at 368 (intention to shift responsibility must be "plainly evident from the face of the contract"). The question then is whether this contract provision clearly reflects such a purpose. We are satisfied that the language of the contract is sufficiently clear that Maryland Drywall is responsible not only for its own negligence, but that its liability also "stretche[s] to encompass [Schlosser's] negligence as well." *Id.* (quoting *Seckinger, supra*, 397 U.S. at 213, 90 S.Ct. at 886).

 The contract provided indemnity for "any and all claims ... arising out of ... or in connection with the execution of the work" contemplated by the contract, and the jury determined that the injuries sustained by Robertson arose out of his work for Maryland Drywall. The language of that contract, from the viewpoint of the parties at the time the contract was made, is "so broad and sweeping as to plainly reveal an intent to encompass losses incurred in whole or in part by the negligence of the indemnitee." *Moses–Ecco Co. v. Roscoe–Ajax Corp.*, 115 U.S.App.D.C. 366, 369, 320 F.2d 685, 688 (1963); *see Princemont Constr. Corp. v. Baltimore and Ohio R.R. Co.*, 131 A.2d 877 (D.C.1957). In *Moses–Ecco*, the court was called upon to interpret a contract provision similar to the one presented in this case.[14] It

---

12. The District also contends that the inherently dangerous activity doctrine does not extend to employees of independent contractors and that the "majority view ... is that an employee may not recover from the person who engages the independent contractor even though the work may be dangerous." Because we reverse the judgment against the District on another ground, we will not resolve this issue.

13. Maryland Drywall argues that the indemnity clause is unenforceable because Schlosser was concurrently negligent and because it had a non-delegable duty to provide a safe work place. Under the District's substantive tort law, a plaintiff's contributory negligence is a complete bar to recovery, as this jurisdiction does not recognize comparative negligence. *General Elevator Co.,*

*supra*, 481 A.2d at 119. A contractual indemnity claim, however, does not sound in tort, and therefore, it does not bar recovery. *See id.* at 117–18. Furthermore, while a party may not be able to exempt itself from tort liability for its nondelegable duties, there is no bar to contractual indemnification for such potential liability. *See Mead v. National R.R. Passenger Corp.*, 676 F.Supp. 92, 95 (D.Md.1987).

14. That agreement provided, in part:

> "The Subcontractor (Moses–Ecco) agrees in the performance of this contract * * * that he will at all times indemnify and save harmless the Owner and the Contractor (Roscoe–Ajax) against any loss, because of injury or damage to persons or property arising or resulting

noted that "[n]o particular form or words are needed but the intent to waive negligence must be clear." *Moses–Ecco, supra,* 115 U.S.App.D.C. at 369, 320 F.2d at 688 (citation omitted) (holding that "[i]t is difficult to conceive of any phraseology broader than Moses–Ecco's agreement to indemnify"). In *Princemont,* this court, in interpreting a contract provision similar to the one in the instant case,[15] held that when the terms of an indemnity agreement are so broad and comprehensive, "the presumption is that if the parties had intended some limitation of the all-embracing language, they would have expressed such limitation." *Princemont, supra,* 131 A.2d at 878.

We agree with these authorities, and we are satisfied that the language used in this contract was sufficiently comprehensive as to include indemnification for damages resulting from the negligence of Schlosser. We see no difference between the formulation in this contract (will "indemnify ... from any and all claims") and that found in *Moses–Ecco* (will "indemnify against any loss") and *Princemont* (will "assume all liability for any and all loss"). We view the provision in this case as clear and certain in its terms giving rise to no ambiguity. *Id.* ("The fact that the language used is comprehensive does not render the provision unclear or uncertain.")

Accordingly, for the reasons stated, we conclude the trial court erred in granting judgment in favor of Maryland Drywall.

No. 92–CV–518 *is hereby reversed,* and,

No. 92–CV–538 *is hereby reversed.*

FARRELL, Associate Judge, concurring in part and dissenting in part:

I have combed the record in this case and am unable to conclude that the District preserved either argument on appeal for reversing the denial of its motions for directed verdict and judgment notwithstanding the verdict. Unless we are to hold, unjustifiably in my view, that the bare assertion by the District's trial attorney that "we delegated our duty" to Schlosser preserved the issues, then the District has waived the arguments that (a), as a matter of law, ordinary building construction work does not involve "inherently dangerous" activity, and (b), even if it may, the inherently dangerous activity doctrine does not apply to employees of independent contractors. I would therefore sustain the verdict against the District of Columbia. On the other hand, in my view the District is correct in its argument that it is entitled to indemnification by Schlosser, and Schlosser in turn—as the majority holds—is entitled to indemnification by Maryland Drywall.

**I.**

Robertson filed suit against, among others, the District of Columbia, W.M. Schlosser Company, and Maryland Drywall Company, alleging that the construction activity undertaken by each defendant amounted to abnormally dangerous activity in the course of which negligence occurred causing him injury. In his pretrial statement, Robertson asserted that the District had a non-delegable duty to provide him with a safe workplace based on the inherently dangerous activity being conducted. The District filed an answer but did not seek summary judgment against Robertson on either ground raised in its appeal. Schlosser, on the other hand, moved for summary judgment on the District's claim for indemnification under the parties' contract, to which the District responded that the contract provisions established that it had "delegat[ed] all responsibility for site safety, including supervision of individual laborers and prohibitions against work under hazardous conditions," to Schlosser. The judge granted summary judgment to Schlosser on this issue. As to Robertson,

---

from the performance of this contract, including any and all loss, cost, damage or expense which the Owner and/or Contractor may sustain or incur on account of any claim, demand or suit made or brought against them or either of them by or on behalf of any employee of (Moses–Ecco)." * * *
*See Moses–Ecco, supra,* 115 U.S.App.D.C. at 368, 320 F.2d at 687 (asterisks in original).

**15.** It provided that the subcontractor agreed:

To assume all liability for any and all loss and damage to property and claims for injury to or death of person in connection with or growing out of the use of said premises.
*See Princemont, supra,* 131 A.2d at 877–78.

the District did not question the judge's pretrial determination that whether the construction work was inherently dangerous was an issue for the jury to decide. At the close of Robertson's case, the District moved for a directed verdict solely on the ground of contributory negligence. At the close of all the evidence, the District renewed the motion but argued only that "we believe that the plaintiff has failed to establish a duty that is owed. We believe our contract delegat[e]s the duty, the responsibility for the safety for the site, such that we do not owe a duty to the plaintiff." The District made no objection to the judge's instruction to the jury explaining a landowner's liability for damages to persons injured during performance of inherently dangerous work by an independent contractor.

Following the verdict, the District moved for JNOV or a new trial. The former (alone at issue here) was based entirely on the claims that Robertson had been contributorily negligent as a matter of law and— curiously—that the judge's earlier ruling on indemnification had been erroneous. I quote the argument in full:

> Before this case was sent to the jury, the Court denied the defendant's motion for a directed verdict based upon the plaintiff's failure to establish that the defendant had violated a duty of care that was owed to him. An element necessary to establish a cause of action in negligence is "a duty or *obligation, recognized by the law, requiring* an action to conform to a certain standard of conduct, for the protection of others against an unreasonable risk." W. PROS- SER, HANDBOOK ON THE LAW OF TORTS, Sec. 30 (4th ed. 1971). A plaintiff seeking recovery in tort must demonstrate that the defendant owed a duty which inurred to his particular benefit. *Id.* at Sec. 53 p. 324.

Earlier in this proceeding, well before this trial commenced, the Court ruled that W.M. Schlosser, Inc. was not required to fulfill its contractual obligation to indemnify, *defend* [1] and hold harmless its contractee, the District, even though it had voluntarily undertaken to do so when the contract was let. The Court's ruling was premised upon a determination that the District could not contract away its own negligence. However, for reasons more fully articulated in the District's opposition to Co-defendant Schlosser's motion for partial summary judgement, the Court's reliance upon the case of *District of Columbia v. Royal,* 465 A.2d 367 (D.C.App. 1983), for the proposition that the District is precluded from delegating responsibility for site safety to Schlosser is misplaced.

As subsequent developments have shown, the District was greatly prejudiced by this ruling. For it not only permitted the plaintiff to improperly focus the jury's attention upon evidentiary matters whose significance and perspective became contorted such as the suggestion that the District was obligated to supply the plaintiff with safety equipment. It also absolved the plaintiff from the necessity of explaining to the jury the nature of the District's obligation, if any, to provide a safe workplace. It became sufficient for the plaintiff to adduce evidence that the District, having applied for a building permit was thereby undertaking to ensure the safety of the entire project. Thus, a situation was created that permitted the complete avoidance of the entire concept of a duty of care owed and a violation of that duty. Instead, the jury was free to hold the District to a standard of strict liability, a result which offends the holding of the Court of Appeals in the *Hyman* [2] case.

By contrast, the Court of Appeals in *General Elevator Company, Inc. v. District of Columbia,* 481 A.2d 116 (D.C.App. 1984) ruled that the District could not be held liable to a plaintiff injured in one of its elevators because it had contractually delegated responsibility for elevator maintenance to General Elevator Company and it had not violated any other duty independently owed to the plaintiff. 481 A.2d at 119. In like manner, the District delegated responsibility for safety at the Arthur

---

1. Emphasis in original.

2. *Martin v. George Hyman Constr. Co.,* 395 A.2d 63 (D.C.1978).

Capper site to the Schlosser Company. Indeed, the court in *General Elevator, supra,* distinguished the decision of the Court of Appeals in *Royal, supra,* on the basis that the latter case involved a violation of a similar independently owed duty to the minor plaintiff. No such duty independently owed to the plaintiff Andre Robertson by the District of Columbia has been identified or placed in issue in this proceeding. Therefore, the Court should grant the District's motion for judgement notwithstanding the verdict reached by the jury in this trial.

As is apparent, nowhere in this argument did the District assert that, as a matter of law, ordinary construction site work is not inherently dangerous such that the issue of inherently dangerous activity never should have been given to the jury, or that this exception to the delegation rule could not be invoked by an employee of a contractor. Not surprisingly, therefore, the trial judge reasoned as follows in denying the District's motion:

> [T]he District requests judgment notwithstanding the verdict on the basis that no independent duty of care was owed to Plaintiff by the District. The District then proceeds to argue that the Court's February 12, 1991, ruling which granted partial summary judgment to Schlosser on the issue of indemnification was incorrect. It appears that the District is attempting to equate the issue of whether a duty was owed to Plaintiff by the District with the issue of whether Schlosser should indemnify it for its liability. These issues cannot be equated. The first issue concerns the District's potential liability, while the second issue concerns who should bear ultimate responsibility for the resulting damages for the breach of an existent duty.
>
> The Court of Appeals in *Levy v. Currier,* 587 A.2d 205, 209 (D.C.App.1991) adopted the principle of *Lindler v. District of Columbia,* 164 U.S.App.D.C. 35, 38 [3] (D.C.Cir.1974) that where the District contracts for the performance of inherently dangerous work, the District has the duty to guard against injuries to third parties

which may result from the performance of such work. Furthermore, these cases hold that such a duty is not delegable.

> Nowhere in its pleading does the District dispute the correctness of the Court's interpretation of the law. In fact, it conceded on the record, prior to trial and through submission of its own proposed special interrogatories to the jury, that this was indeed the law to be applied to this case. The District is merely utilizing its motion to reargue its position that the Schlosser–District contract was sufficiently broad to indemnify the District against its own negligence; an issue on which the Court has conclusively ruled, i.e., the District was not entitled to indemnification.
>
> Plaintiff presented ample evidence to allow the jury to conclude that the work engaged in by Plaintiff was inherently dangerous. In fact, the jury's verdict specifically made that finding. [Footnotes omitted.]

It is impossible to find in the District's submissions below the arguments it now raises against the jury verdict. As the trial judge recognized, the District's attorney confused the separate issues of indemnification and liability. At no place did he argue for a broad exemption of ordinary construction work from the reach of the inherently dangerous activity exception, nor for an equally broad exemption for employees of an independent contractor. Rule 50 of the Superior Court Rules of Civil Procedure, at the time of trial, required a motion for directed verdict to "state the specific grounds therefor." The revised rule now effective does not change the standard materially, requiring the motion to "specify the judgment sought and *the law and the facts* on which the moving party is entitled to judgment" (emphasis added). A bare assertion that the District had delegated its obligation for worksite safety to Schlosser, without challenging the sufficiency of the evidence supporting the classic exception to the delegation rule at issue here, does not meet this test. I would therefore apply the principle that,

---

**3.** 502 F.2d 495, 498.

[i]n our jurisprudential system, trial and appellate processes are synchronized in contemplation that review will normally be confined to matters appropriately submitted for determination in the court of first resort. Questions not properly raised and preserved during the proceedings under examination, and points *not asserted with sufficient precision to indicate distinctly the party's thesis*, will normally be spurned on appeal.

*Miller v. Avirom*, 127 U.S.App.D.C. 367, 469–70, 384 F.2d 319, 321–22 (1967) (emphasis added).

The majority may well be correct that construction work of the sort Robertson performed should generally not be considered inherently dangerous for purposes of this exception to the delegation rule. But I cannot say the District's failure to argue this point specifically in its directed verdict motions had no effect on the adequacy of the plaintiff's proof, *see Howard Univ. v. Best*, 547 A.2d 144, 148 (D.C.1988) (purpose of the motion is to "put [opposing party] on notice of the alleged deficiency in her proof"), or on the framing of the legal issues submitted to the jury. In particular, had the District not conceded that the inherently dangerous activity issue was for the jury to decide, Robertson might have pressed more vigorously for submission to the jury of his alternative theory (Complaint, ¶¶ 8–13) that the District breached a non-delegable duty stemming from its right to control the contractor's work by mandatory inspections by the on-site construction inspector, a District employee. *See* RESTATEMENT (SECOND) OF TORTS § 414 comment c (1965); *City of Miami v. Perez*, 509 So.2d 343, 346 (Fla.Ct.App.1987); *Micheletto v. State*, 244 Mont. 483, 798 P.2d 989, 997–98 (1990) (McDonough J., dissenting) ("If there is an exercise of retained control, then it does not matter who expressly assumed safety duties under the contract, as the general contractor has a separate and distinct duty of reasonable care").

I likewise am unwilling to decide for the first time on appeal, as the District urges us to do, the difficult question of *employee* recovery under the inherently dangerous activity exception. The District urges us to reject the holding of *Lindler v. District of Columbia*, 164 U.S.App.D.C. 35, 39, 502 F.2d 495, 498 (1974), as inconsistent with the majority view,[4] but I am not convinced without further analysis that we can bar contractor employees from recovery in this context consistently with *Meiggs v. Associated Builders, Inc.*, 545 A.2d 631 (D.C.1988), *cert. denied*, 490 U.S. 1116, 109 S.Ct. 3178, 104 L.Ed.2d 1040 (1989) (ordinarily, employees of subcontractor may sue general contractor—and, by implication, landowner—in tort despite receiving worker's compensation). So complex an issue as the interplay between worker's compensation and the inherently dangerous activity exception should not engage our energies when it was raised neither on summary judgment nor in any other specific manner at trial.

I would hold that the District's motions for directed verdict and JNOV were properly denied.

**II.**

At the same time, the District is correct in regard to an issue it squarely raised at trial, *i.e.*, that it is entitled to indemnification from Schlosser under the terms of its contract with the general contractor. (My colleagues in the majority have no occasion to reach this issue). The case was submitted to the jury *via* interrogatories that premised the District's liability on a finding that the work Robertson performed was inherently dangerous. If, the verdict form stated, "you find that Mr. Robertson was not engaged in inherently dangerous work, your [the jury's] work is completed." If the jury found affirmatively on that question, they were next to decide whether "the failure to guard the wall opening through which Mr. Robertson fell was due to negligence" as the judge had defined it.[5] Accordingly, the District's negli-

---

4. *Lindler* held that the District's duty to guard against injuries to third persons resulting from inherently dangerous work applied equally to third persons generally and to employees of the District's contractor.

5. If the answer to this question was "yes," they were to decide further whether Robertson had assumed the risk or been contributorily negligent, and (if not) whether "the failure to guard

gence *vel non* was predicated on vicarious liability: the negligence of Schlosser (and its subcontractor) in failing to guard the wall opening, if found by the jury, was imputable to the District as landowner if—but only if—Robertson had been engaged in inherently dangerous work, which the jury found to be the case. The indemnification article of the District's contract with Schlosser provided:

> The Contractor shall indemnify and save harmless the District and all of its officers, agents and servants against any and all claims or liability arising from or based on, or a consequence or result of, any act, omission or default of the Contractor, his employees, or his subcontractors, in the performance of, or in connection with, any work required, contemplated or performed under the Contract.

Because the District's liability in this case stemmed from the "act, omission or default of the Contractor, his employees, or his subcontractors," the District was entitled to indemnification under the contract. *See East Penn Mfg. Co. v. Pineda,* 578 A.2d 1113, 1126 (D.C.1990).

In *General Elevator Co. v. District of Columbia,* 481 A.2d 116 (D.C.1984), the District was found liable for breach of a duty to maintain an elevator. That duty had been delegated to General Elevator in a contract for maintenance and repair that had an indemnity clause similar to the one in this case.[6] We held that the District was entitled to indemnity, stating:

> [S]ince the District owed Mrs. Cephas [the plaintiff] no duty other than the one which it had delegated to General Elevator, namely, to maintain the elevators in good working order, the judgment which it had to pay Mrs. Cephas was clearly within the scope of the indemnity clause.

*Id.* at 120. This case is like *General Elevator* and quite unlike *District of Columbia v. Royal,* 465 A.2d 367 (D.C.1983), on which the

trial judge incorrectly relied. We summarized *Royal* in *General Elevator* as follows:

> In [*Royal*], we held that an indemnification clause similar to the one in this case was not broad enough to indemnify the District against liability for its own negligence. The six-year-old plaintiff in *Royal* was injured when a pole fell on her at a construction site near her school. She sued both the construction company and the District, alleging *inter alia* that the District had negligently failed to supervise school children in the construction area. The District filed a cross-claim against the construction company based on an indemnity clause in the construction contract. The trial court ruled against the District on the cross-claim, and we affirmed, holding that the contractual language could not be stretched to encompass the District's breach of its own independent duty, as the party to whose care the plaintiff had been entrusted during school hours, to protect her from injury—*i.e.,* that it had breached a duty to the plaintiff which had not been delegated to the construction company by the contract containing the indemnity clause.

481 A.2d at 119–20. Just as *General Elevator* "differ[ed]" from *Royal* in that the District "owed Mrs. Cephas no duty other than the one which it had delegated," *id.,* so does this case differ: the District had no duty to Robertson, under the theory of liability submitted in this case, other than the one it delegated to Schlosser. Indeed, the very purpose of the indemnity clause was to shift any liability for negligence on the construction site to the party contracted with to perform the work. As the District points out, such provisions allow the government to fix the cost of a construction project at its inception. They provide notice to the contractor of the risks of loss for which it needs insurance, and allow it to factor in the cost for insurance when submitting a bid. The

---

the wall opening was the proximate cause of Mr. Robertson's injuries."

**6.** The clause provided that General Elevator would indemnify the District for "any and all claims ... on account of any injuries to persons ... that occur as a result of any act or omission

of [General Elevator] ... in the prosecution of the work under this Contract," though General Elevator would not be liable "for personal injury ... if it is proved that it was beyond [its] control and not due to [its] negligence." *General Elevator,* 481 A.2d at 117.

net effect of such provisions is to require the contractor to obtain insurance and permit the District to charge to that insurance any liability it may incur as a result of any act or omission of the contractor or his employees or subcontractors.

I would hold that Schlosser must indemnify the District for the damages attributable to the District by virtue of the jury's finding of inherently dangerous activity.

### III.

It remains for me to say that I agree with the majority that Maryland Drywall is contractually obliged to indemnify Schlosser for damages resulting from the negligence of Schlosser. On that point *Moses–Ecco Co. v. Roscoe–Ajax Corp.*, 115 U.S.App.D.C. 366, 369, 320 F.2d 685, 688 (1963), and especially *Princemont Constr. Corp. v. Baltimore & Ohio R.R. Co.*, 131 A.2d 877 (D.C.1957), are controlling.[7] *See also Rivers & Bryan, Inc. v. HBE Corp.*, 628 A.2d 631, 636–37 (D.C. 1993).

---

**7.** The same contractual provision required Maryland Drywall to indemnify the District of Columbia ("the Owner") as well.